```
MARK GORTON (SBN 099446)
THOMAS G. MOUZES (SBN 099446)
BOUTIN JONES INC.
555 Capitol Mall, Suite 1500
Sacramento, California 95814
Telephone:  (916) 321-4444
Facsimile:  (916) 441-7597
Email:      mgorton@boutinjones.com
            tmouzes@boutinjones.com

Special Counsel for Chapter 7 Trustee
KIMBERLY J. HUSTED
```

UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

(Sacramento Division)

| | |
|---|---|
| In re<br><br>STUART LANSING SMITS,<br><br>                              Debtor. | Case No. **2011-34464-A-7**<br><br>Chapter 7<br><br>DCN: TGM-13<br><br>**MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSIES AND RELATED SETTLEMENT AGREEMENT**<br><br>Date:  June 2, 2014<br>Time:  10:00 a.m.<br>Dept:  Crtrm 27, 7th Floor<br>Judge: Honorable Michael S. McManus |

## MOTION FOR APPROVAL OF COMPROMISE OF CONTROVERSIES, AND RELATED SETTLEMENT AGREEMENT

Kimberly J. Husted, the Chapter 7 Trustee herein ("Husted" or "Trustee Husted"), submits this Motion for Approval of Compromise of Controversies and Related Settlement Agreement ("Motion") and in support thereof, respectfully represents as follows:

1. On June 9, 2011, Stuart Smits ("Debtor") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Schedules in this case reflect that assets of the estate include at least a 25% member interest in Pacific Coast Exploration, LLC, 100% membership interest in Opaque Investors II, LLC, and 9.33% membership interest in Opaque Investors I, LLC.

1    Opaque Investors II, LLC is subject to its own bankruptcy proceeding and Thomas Aceituno is the current Chapter 7 trustee and a party to the agreement subjection to this motion.

       2.    On February 8, 2012, the case was converted to Chapter 7 and Kimberly J. Husted (Trustee Husted) was appointed Chapter 7 Trustee.

       3.    Jurisdiction for the filing of this Motion exists pursuant to 28 U.S.C. sections 157 and 1334, Federal Rule of Bankruptcy Procedure 9019(a), and the reference to this Bankruptcy Court by the United States District Court for the Eastern District of California.

       4.    The Schedules in the Smits bankruptcy case (Docket No. 17) reflect that assets of the bankruptcy estate include at least a 25% member interest in Pacific Coast Exploration, LLC, 100% membership interest in Opaque Investors II, LLC, 9.33% membership interest in Opaque Investors I, LLC and a 0.5% working interest in the oil fields in Kern County discussed below. In addition, as part of a compromise of Trustee Husted with Michael Phillips approved by this Court (Docket Nos. 244-247, 259), Trustee Husted acquired all right, title and interest of Michael Phillips in Pacific Coast Exploration, LLC, and all of his right, title and interest of 3 and 1/3% in Opaque Investors I, LLC. Trustee Husted is informed that Pacific Coast Exploration, LLC and Opaque Investors I, LLC also hold working interests in the oil fields located in Kern County discussed below.

       5.    Opaque Investors II, LLC, is subject to its own bankruptcy proceeding and Thomas Aceituno ("Aceituno" or "Trustee Aceituno") is the current Chapter 7 trustee and a party to the agreement subject to this motion. Trustee Husted is informed that Opaque Investors II, LLC holds working interests in the oil fields discussed below. Trustee Husted is informed that several creditors hold identical allowed claims in the bankruptcy estates of Stuart Smits and Opaque Investors II, LLC. One such creditor is Mr. Elias Bardis who obtained a pre-petition judgment against Stuart Smits and Opaque Investors II, LLC. Trustee Aceituno and Trustee Husted are sometimes referred to herein as "Trustees."

       6.    Neither Trustee Aceituno nor Trustee Husted seek approval of the sale of the estates' Working Interests in the Opaque Project at this time. Rather, both Trustees seek approval of the Agreement only, which assuming a sale occurs and the other conditions are satisfied, resolves all differences between the Parties including as to how the Initial Payment and the Royalty Payments,

both described herein, will be distributed in connection with the anticipated sale of the estates' interests in the Opaque Project, described herein. It is unknown if the buyer will complete the purchase.

    7.    In the Superior Court of California for the County of Sacramento, there was a pending Cross-Complaint in the action entitled *Elias D. Bardis v. Pacific Coast Exploration*, Sacramento County Superior Court Case No. 2008-00021726 (hereinafter referred to as the "Action") in which, among other things, Cross-Complainants Husted and Aceituno alleged that Cross-Defendants PCE, Cufaude, and Hankins are obligated to defend and indemnify Cross-Complainants in the Action and further allege that Cross-Defendants breached fiduciary obligations to Cross-Complainants and defrauded Cross-Complainants, acting singly and in concert with others. PCE, Cufaude, and Hankins deny the allegations in the Cross-Complaints. The Action arises in connection with development of and investment in oil field projects in California.

    8.    In the Action, on or about October 15, 2013, Trustee Husted and Trustee Aceituno obtained an agreement stated on the record in the Action for a stipulated judgment in their favor and against Pacific Coast Exploration, LLC and Lester Cufaude, jointly and severally, for the full amount of the indemnity of the judgment obtained by Elias Bardis against Stuart L Smits and Opaque Investors II, LLC, plus the sum of $100,000, plus the cost of both Trustees in prosecuting the Action, which judgment would be delayed entry and would become effect if the settlement the subject to this motion is breached. In addition, the Court in the Action declared that the ownership interests in Pacific Coast Exploration, LLC was as follows 32.5% Lester Cufaude, 32.5%, Dale Hankins, and 35% the bankruptcy estate of Stuart Smits. Mr. Hankins was dismissed from the Action and Mr. Phillips had previously resolved the disputed.

    9.    The proposed compromise, includes nonparties to the Action, which was also stated on the record in the Action, that is the subject of this Motion relates to claims, actions, and other actual and/or potential disputes (collectively the "Disputes") among the following parties (collectively referred herein as "Parties") and a potential sale of the oil fields:

    a.    Kimberly Husted (Trustee Husted), in her capacity as the Chapter 7 Trustee of the Estate of Stuart Smits ("Smits Estate") in United States Bankruptcy Court, Eastern District of

3

MOTION TO APPROVE COMPROMISE  
598076.1B  
023269/00001

1　California, Case Number 11-34464-A-7;

2　　　　b.　Thomas A. Aceituno (Trustee Aceituno), in his capacity as the Chapter 7
3　Trustee of the Estate of Opaque Investors II, LLC ("Opaque Estate"), in United States Bankruptcy
4　Court, Eastern District of California, Case Number 11-34469-A-7;

5　　　　c.　Stuart L. Smits ("Smits");

6　　　　d.　Pacific Coast Exploration, LLC ("PCE");

7　　　　e.　Lester Cufaude ("Cufaude");

8　　　　f.　Dale Hankins ("Hankins");

9　　　　g.　Kevin Weddle, including Golden State Natural Gas Systems, Inc. (hereinafter
10　"Weddle"); and,

11　　　　h.　Keith Nickell, including Snows Oil Field Service, Inc., and D.S.R.
12　(hereinafter "Nickell").

## THE AGREEMENT

14　　　10.　Trustee Husted, along with Trustee Aceituno, seek approval of the Agreement to
15　Distribute Proceeds And Settlement Agreement and Release Of All Claims ("Agreement"), a true
16　and correct copy of which is attached as Exhibit "A" to the Exhibits Cover Sheet filed and served
17　herewith. The Agreement pertains to the Parties' division of proceeds in connection with the
18　anticipated sale of the Working Interests in the Opaque Project oil field in Kern County, California
19　("Opaque Project"), in which the Opaque Estate and the Smits Estate have interests, as described
20　below. In connection with the Agreement, the Cross-Complainants and Cross-Defendants, and other
21　persons, desire to settle the disputes which exist or may exist between them, including, but not
22　limited to, those referenced in the Action.

23　　　11.　There was a Memorandum of Understanding between GTherm, Inc. ("Buyer"), and
24　the following owners of 94.2% of the Working Interests in the Opaque Project:

25　　　　a.　PCE as to 42.45%;

26　　　　b.　Nickell as to 27%;

27　　　　c.　Opaque Investors I, LLC, as to 11.25%;

28　　　　d.　Weddle as to 10%;

4

     e.    Ken Young, KDY, Inc., as to 2.0%; and

     f.    Johnny Valensin as to 1.5%.

12.    The owners of the remaining 5.8% of the Working Interests in the Opaque Project are:

     a.    Trustee Aceituno as to 5.3%; and,

     b.    Trustee Husted as to 0.5%;

13.    The Buyer proposes to buy one hundred percent (100%) of the Working Interests in the Opaque Project, for the sum of approximately $17,000,000.00, payable in one installment of $7,000,000.00 ("Initial Payment") with the remaining $10,000,000.00 ("Royalty Payments") to be paid at a royalty rate of 5% out of future production. As discussed above, neither Trustee Aceituno nor Trustee Husted seek approval of the sale of the estates' Working Interests in the Opaque Project at this time. At this time, both Trustees seek approval of the Agreement only, which assuming a sale occurs, resolves all differences between the Parties including as to how the Initial Payment and the Royalty Payments will be distributed in connection with the anticipated sale of the estates' interests in the Opaque Project. It is unknown if the Buyer will complete the purchase. Further, Trustee Husted is informed the lessor of the oil fields have sent PCE a notice of default under the lease and which both Trustees contends violates the automatic stay.

14.    Assuming a sale of the respective interests in the Opaque Project occurs, the Agreement provides in pertinent part as follows:

     a.    **Initial Payment.**

         i.    From the Initial Payment, PCE will receive a distribution of $2,521,500, all of which shall be utilized to pay the following persons or entities the listed amounts:

| | | |
|---|---|---|
| (1) | Nickell | $1,800,000 |
| (2) | Johnny Valensin | $ 250,000 |
| (3) | Ken Young / KDY, Inc. | $ 250,000 |
| (4) | Dale Hankins | $ 75,000 |
| (5) | Lester Cufaude | $ 51,500 |
| (6) | Ben Fitzgerald | $ 50,000 |

5

|     |     |     |
| --- | --- | --- |
| (7) | Dan Karalash | $ 25,000 |
| (8) | Mike Reed | $ 20,000 |

    ii.    PCE will also receive credit for the sum of $450,000.00, made payable directly to "Thomas A. Aceituno, Bankruptcy Trustee for the estate of Opaque Investors II, LLC" which funds shall be distributed according to applicable bankruptcy laws. Save and except for debts specifically identified in the Agreement, PCE warrants and represents that there are no other outstanding debts owed by PCE.

    iii.    **Nickell /Snows Oil Field Service, Inc./D.S.R.** From the Initial Payment, Nickell shall receive $1,440,000 and the Parties agree that they shall not contest the transfer from PCE of a 22% Working Interest to Nickell in exchange for his agreement to take a lesser distribution out of the Initial Payment than he would otherwise be entitled to take. Nickell will be entitled to receive 27% of the Royalty Payments subject to the schedule set forth herein, with the express agreement that Nickell will be entitled to a preference over any Royalty Payments which would otherwise go to Trustee Husted/the Smits Estate and their successors, until such time as Nickell has been paid the sum of $450,000 out of the Royalty Payments, at which time the preference will cease. As provided in the Agreement, Nickell shall cooperate with PCE, Trustee Husted and Trustee Aceituno to withdraw or extinguish or cause a Satisfaction of Judgment to be filed with regard to the Stipulated Judgment entered into in Sutter County, California, between PCE, and Nickell /Snows Oil Field Service, Inc./D.S.R., and shall cause any Abstract of Judgments and the UCC-J's recorded in Kern County, and any other county, to be withdrawn or otherwise recognized as null and void for all purposes, and Nickell confirms that any and all other debt and security interests are null and void.

    iv.    **Weddle/Golden State Natural Gas Systems, Inc.** From the Initial Payment, Weddle shall receive $350,000, and the Parties agree that they shall not contest the transfer from PCE of a 10% Working Interest to Weddle in exchange for his agreement to take a lesser distribution out of the Initial Payment than he would otherwise be entitled to take. Weddle will be entitled to receive 10% of the Royalty Payments subject to the schedule set forth herein, plus an additional $50,000 from the Royalty Payments which would otherwise be allocated to the Smits

6

Estate, with the express agreement that Weddle will be entitled to a preference over any Royalty Payments which would otherwise go to Trustee Husted/the Smits Estate and their successors, until such time as Weddle has been paid the sum of $500,000 out of the Royalty Payments, at which time the preference will cease. As provided in the Agreement, Weddle shall cause the UCC-1's filed with the California Secretary of State and/or abstract of judgments/liens recorded in Kern County, and any other county, in favor of Golden State Natural Gas Systems, Inc., to be withdrawn or otherwise recognized as null and void for all purposes, and confirms that any and all debt and security interests are null and void.

       v.    **Trustee Husted.** From the Initial Payment, Trustee Husted shall receive $800,000.

       vi.    **Opaque Investors I, LLC.** From the Initial Payment, Opaque Investors I, LLC, shall receive 11.25% of $7,000,000.00, or $787,500.00.

       vii.    **Trustee Aceituno.** From the Initial Payment, Trustee Aceituno shall receive $371,000.00, representing Opaque Investors II, LLC's Working Interest ownership of 5.30%.

       viii.    **KDY, Inc.** From the Initial Payment, KDY, Inc., shall receive 2% of $7,000,000.00, or $140,000.00.

       ix.    **Johnny Valensin.** From the Initial Payment, Johnny Valensin shall receive 1.5% of $7,000,000.00, or $105,000.00. There is a pending adversary with Mr. Valensin and his entity, which will be the subject of a separate settlement motion to resolve that dispute since he is not a signatory to the Agreement.

       x.    **Trustee Aceituno.** From the Initial Payment, Trustee Aceituno shall receive an additional $35,000.00, representing the one-half of one percent of the Working Interest previously owned by Elias Bardis.

   b.    **Royalty Payments.**

       i.    The Parties agree that the Royalty Payments shall be paid out to the following interests or their assignees in the following proportions, subject to the preferences identified herein:

       (1)    Smits Estate and its successors 35.5%

      (2) Nickell 27.0%

      (3) Opaque Investors I, LLC 11.25%

      (4) Weddle 10.0%

      (5) PCE 7.45 %

      (6) Opaque Estate (Trustee Aceituno) and its successors 5.3%

      (7) KDY, Inc. 2.0%

      (8) Johnny Valensin 1.5 %

   ii. However, Nickell shall have a preference over the Smits Estate such that the Smits Estate shall not receive anything until Nickell has been paid $450,000. Weddle has the right to collect $50,000 from the Smits Estate and its successors such that the Smits Estate and its successors shall not receive and Royalty Payments until Weddle has been paid $500,000.

   iii. Consistent with the foregoing, the schedule for the first $850,591.71 in Royalty Payments is as follows:

      (1) Smits Estate and its successors $0

      (2) Nickell $450,000.00

      (3) Weddle $166,678.98

      (4) Opaque Investors I, LLC $95,691.56

      (5) PCE $63,369.09

      (6) Opaque Estate (Trustee Aceituno) and its successors $45,081.36

      (7) KDY, Inc. $17,011.84

      (8) Johnny Valensin $12,758.88

   iv. Consistent with the foregoing, the schedule for the next $622,683.58 in Royalty Payments is as follows:

      (1) Smits Estate and its successors $0

      (2) Nickell $168,124.56

      (3) Weddle $283,321.02

      (4) Opaque Investors I, LLC $70,051.90

    (5) PCE $46,389.94

    (6) Opaque Estate (Trustee Aceituno) and its successors $33,002.22

    (7) KDY, Inc. $12,453.68

    (8) Johnny Valensin $9,340.26

  v. Consistent with the foregoing, the schedule for the next $140,845.10 in Royalty Payments (to reflect $50,000 from Smits to Weddle):

    (1) Smits Estate and its successors $0

    (2) Nickell $38,028.17

    (3) Weddle $64,084.51

    (4) Opaque Investors I, LLC $15,845.07

    (5) PCE $10,492.96

    (6) Opaque Estate (Trustee Aceituno) and its successors $7,464.79

    (7) KDY, Inc. $2,816.91

    (8) Johnny Valensin $2,112.69

  vi. Consistent with the foregoing, the remaining $8,385,879.61 in Royalty Payments shall be paid out according to the royalty interests set forth initially and repeated here:

    (1) Smits Estate (Trustee Husted) and its successors 35.5%

    (2) Nickell 27.0%

    (3) Opaque Investors I, LLC 11.25%

    (4) Weddle 10.0%

    (5) PCE 7.45%

    (6) Opaque Estate (Trustee Aceituno) and its successors 5.3%

    (7) KDY, Inc. 2.0%

    (8) Johnny Valensin 1.5%

 c. Immediately upon Bankruptcy Court approval of the Agreement, Dale Hankins shall transfer his 3 and 1/3% ownership interest and membership interest in Opaque

Investors I, LLC, to Trustee Husted.

      d.     No later than the date of payment of the Initial Payment, PCE shall accept the withdrawal of Smits as a member and shall thereupon transfer to Trustee Husted an undivided right to 35% of the Royalty Payments (subject to the preferences identified herein and the payment of $50,000 Weddle out of Royalty Payments), such that PCE will retain a right to 7.45% of the Royalty Payments and the only members of PCE shall be Cufaude and Hankins.

      e.     PCE and its principals will withdraw all claims in the Bankruptcy Court except for those claims previously filed which were made on behalf of Nickell, however, PCE shall be permitted to file an Amended Claim or Amended Claims and both Trustees are not waiving any defenses or conceding the propriety of such claims.

      f.     By express consent of the Parties, the Superior Court of California, County of Sacramento, will retain jurisdiction to resolve disputes regarding the interpretation of the Agreement.

      g.     As soon as practical after the payment of the Initial Payment and the issuance of orders approving the Agreement by the Bankruptcy Court in the Opaque Estate and the Smits Estate, Cross-Complainants shall cause appropriate dismissals, with prejudice, of the Action to be filed and served.

## CONDITIONS PRECEDENT

      h.     The Agreement is expressly conditioned upon and subject to the satisfaction of all of the following conditions precedent: (a) the approval of the Agreement and related documents, if any, by the Bankruptcy Court in the Opaque and Smits bankruptcy cases in a form and substance acceptable to the respective bankruptcy Trustees; (b) entry of an order of the Bankruptcy Court approving the Agreement and the actions contemplated herein in a form and substance acceptable to the respective Opaque and Smits bankruptcy Trustees; (c) the Parties each properly completing and executing the Agreement or documents substantially similar to the Agreement to reflect the transactions and all related instruments, documents and agreements in a form and substance acceptable to the respective Opaque and Smits bankruptcy Trustees; (d) performance by all Parties of their obligations under the Agreement and related instruments, documents and agreements including the transfers described herein; and, (e) the closing of the sale of Working

MOTION TO APPROVE COMPROMISE         023269/00001
598076.1B

Interests in the Opaque Project. The Agreement presupposes the sale of the interests in the oil fields. If the sale does not close, the Agreement is null and void.

## RELEASES

i.     Assuming the conditions precedent are satisfied including a sale, in connection with the Agreement, the Agreement contains releases of claims related to the Action.

j.     The claims released pursuant to the Agreement do not include: (a) claims, if any, that arise from, pertain to, or are based upon a breach of the Agreement; and/or (b) claims, if any, that arise from, pertain to, or are based upon the executory obligations imposed by the Agreement.

## WITHDRAWAL OF PROOFS OF CLAIMS

k.     Except as expressly set forth in the Agreement, each and every Party who has previously filed a proof of claim shall cause the release and withdrawal of any and all proof of claims filed in the Bankruptcy Cases, including, without limitation, any proof of claim filed in the bankruptcy case of Stuart Smits, Case No. 2011-34464-A-11; and any and all claims filed in the bankruptcy case of Opaque Investors II, LLC, Case No. 2011-34469-A-11. The release, withdrawal and dismissal of such claims shall be with prejudice except as otherwise expressly set forth in the Agreement.

The Agreement, including the releases therein, does not apply in any form, express or implied, to Trustee Husted's Proof of Interest filed in the Opaque Estate.

## THE AGREEMENT SHOULD BE APPROVED AS A FAIR AND EQUITABLE COMPROMISE OF CONTROVERSIES

15.     Trustee Husted requests that this court approve the Agreement as a compromise of controversies pursuant to Federal Rule of Bankruptcy Procedure 9019(a). As set forth in the case of In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988), the bankruptcy court has great latitude in approving compromise agreements. However, the court may only approve a compromise if it is "fair and equitable." Id. In Woodson, the Ninth Circuit Court of Appeals outlined the following factors to be considered in reviewing a proposed settlement:

(a) The probability of success in the litigation;

MOTION TO APPROVE COMPROMISE     023269/00001
598076.1B

　　　　(b) The difficulties, if any, to be encountered in the matter of collection;

　　　　(c) The complexity of the litigation involved, and the expense, inconvenience and delay caused by necessarily attending it;

　　　　(d) The paramount interest of the creditors and deference to their reasonable views in the premises.

Id. (quoting In re A&C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986)).

16. Trustee Husted submits that the proposed Agreement is fair and equitable under all the circumstances and is in the best interests of creditors within applicable Ninth Circuit standards.

17. Although the Agreement summarized above is mathematically and mechanically complex, the provisions impacting the Opaque Estate and the Smits Estate, and the compromise it is making, are relatively straightforward. In summary, and assuming a sale of the entire oil fields, the Smits Estate will receive the following under the Agreement:

　　　　a.　$800,000.00 from the Initial Payment.

　　　　b.　35.5% of the Royalty Payments, payable as follows:

　　　　　　i.　-0-from the first $850,591.71;

　　　　　　ii.　-0- from the next $622,683.58;

　　　　　　iii.　-0-from the next $140,845.10; and,

　　　　　　iv.　35.5% of the remaining $8,385,879.61 in Royalty Payments.

18. The Smits Estate which owns 100% of Opaque Investors, II, LLC, and has a membership interests in Opaque Investors, I, LLC, should also participate with distributions provided to those respective entities. Upon satisfaction of the conditions precedent discussed above, Parties to the Agreement will provide the estate with additional consideration in the form of withdrawals of proofs of claims.

19. The compromise addressed in the Agreement, as it relates to the Smits' Estate, is with respect to actual or potential Disputes between the Parties, including in connection with the Action described above. Trustee Husted, with the assistance of his special litigation counsel and special bankruptcy counsel, and working in concert with Trustee Acetunio and her special litigation counsel and bankruptcy counsel, has investigated the strengths and weaknesses of his the estate's position in

the Action, and otherwise regarding Cross-Defendants, and has concluded, after due consideration of all relevant evidence, that settlement of the Disputes as set forth in the Agreement as to Cross-Defendants is in the best interests of this bankruptcy estate and its creditors.

20. As to the probability of success in the litigation with Cross-Defendants, Trustee Husted believes her chances of prevailing are high and that she would obtain through litigation a judgment of indemnity and defense and declaring that Cross-Defendants breached fiduciary duties. For all intents and purposes, however, Trustee Husted is obtaining such relief through the proposed settlement without the continuing costs, expenses and delay associated with ongoing litigation. Moreover, Trustee Husted will obtain through the Agreement transfers of the Cross-Defendants' Working Interests described above, which inure not only to the Smits bankruptcy estate, but also to the Opaque bankruptcy estate. That is because completion of the transfers will permit both bankruptcy estates to fully liquidate their respective interests in the described assets. Accordingly, this factor weighs in favor of granting the Motion.

21. Absent settlement, it is possible that both Trustees' efforts to obtain defense and indemnity from Cross-Defendants would be unsuccessful. In lieu of defense or payment, however, both Trustees are obtaining through the proposed settlement the benefits of the Action, which, once liquidated, will more than compensate the estates for the injuries they alleged against Cross-Defendants. As a result, this factor in the Woodson analysis also weighs in favor of granting the Motion.

22. Collection is a factor favoring approval of the Agreement. While Trustee Husted does not have specific information about the financial wherewithal of Cross-Defendants PCE, Cufaude, and Hankins, Trustee Husted recognizes the risk inherent in all litigation that, even if the estate prevails, any judgment will be uncollectible. This is particularly so with respect to entity defendants such as PCE. Entering into the Agreement allows the estate to mitigate such risks, while obtaining much of the relief sought by way of the Cross-Complaint.

23. The Disputes here involve sufficient complexity such that the expense, inconvenience and delay likely to be encountered by continued maintenance of the litigation justify settlement. The Disputes deal with potential disputed factual and legal issues concerning defense and indemnity and

various alleged breaches of fiduciary duties. Development of these legal and factual issues will likely require substantial written discovery, as well as one or more depositions. Again, resolution of the Disputes through the proposed compromise will avoid the delays, inconvenience and additional expense associated with continuing litigation. As such, this factor weighs in favor of granting the Motion.

24. The compromise is fair and equitable for the additional reason that it resolves disputes which are procedurally complex. As is apparent from the above description of the Parties' respective Working Interests, there are numerous stakeholders (and personalities), many with independent counsel, each advocating for their own fractionalized interests in several overlapping entities engaged in the development of a speculative oil field development project. Several Parties have independent disputes with one another based upon a number of theories. Absent the Agreement, each of the Parties advocating for its own interests may detrimentally impact the value of all of the Parties' respective Working Interests, including those belonging to the Opaque Estate. Trustee Husted has concluded that the Agreement between the Parties as to distribution of the proceeds from the anticipated sale of 100% of the Working Interests in the Opaque Project to G-Therm, or some other person or entity, enhances the value of the Opaque Estate's Working Interests in that project.

25. The paramount interests of creditors is a significant factor in favor of approval of the Motion and Agreement. The proposed compromise will allow Trustee Husted to conclude the litigation in a highly cost-effective manner, obtaining precisely the recovery sought to accomplish Trustee Husted's objectives. The most active creditor in the bankruptcy cases is Elias Bardis. Mr. Bardis has been an active participant in the negotiations leading up to the proposed settlement and therefore supports the proposed settlement, as it is likely, once approved by this Court, to pave the way for ultimate payment of his sizable claims in either or both of the bankruptcy cases. Thus, this factor also weighs in favor of granting the Motion.

**WHEREFORE**, Trustee Husted requests that this Court: (1) approve the compromise of controversies and Agreement as fair and equitable; (2) authorize Trustee Husted to execute the proposed Agreement and any reasonably related documents to effect the purposes of the Agreement;

1  (3) authorize Trustee Husted to perform under the Agreement; (4) authorize Trustee Husted to
2  otherwise take all other appropriate actions in accordance with the terms of the Agreement; and
3  (5) for such other relief as the Court deems necessary and proper.
4  Dated: May 5, 2014.

                    BOUTIN JONES INC.
                    Attorneys at Law

                    By: _____
                            THOMAS G. MOUZES

                    Special Counsel for Trustee Husted.