# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA
# CIVIL MINUTES

| | | | |
|---|---|---|---|
| **Case Title :** | Stuart Lansing Smits | **Case No :** | 11–34464 – A – 7 |
| | | **Date :** | 6/2/14 |
| | | **Time :** | 10:00 |
| **Matter :** | [261] – Motion/Application to Compromise Controversy/Approve Settlement Agreement with Thomas A. Aceituno, Stuart L. Smits, Pacific Coast Exploration, LLC, Lester Cufaude, Dale Hankins, Kevin Weddle, and Keith Nickell [TGM–13] Filed by Trustee Kimberly J. Husted (mgas) | | OPPOSED |
| **Judge :** | Michael S. McManus | | |
| **Courtroom Deputy :** | Sarah Head | | |
| **Reporter :** | Diamond Reporters | | |
| **Department :** | A | | |

**APPEARANCES for :**
**Movant(s) :**
    Trustee – Kimberly J. Husted
    Trustee's Attorney – Thomas G. Mouzes
**Respondent(s) :**
    Creditor – Lester Cufaude
    Creditor's Attorney – George Hollister, David Meegan (by phone)
    Interested Party – Howard Nevins

MOTION was :
Granted
See final ruling below.

ORDER TO BE PREPARED BY :     Movant(s)

Final Ruling: The motion will be granted.

The trustee seeks approval of a compromise. The agreement is among the following parties:

– the trustee of the bankruptcy estate of Stuart Smits,
– the trustee of the bankruptcy estate of Opaque Investors II, L.L.C.,
– Stuart Smits,
– Pacific Coast Exploration, L.L.C.,
– Lester Cufaude,
– Dale Hankins,
– Kevin Weddle (including Golden State Natural Gas Systems, Inc.), and
– Keith Nickell (including Snows Oil Filed Service, Inc. and D.S.R.).

The agreement resolves claims among the parties and settles the distribution of proceeds from the anticipated sale of the Working Interests in the Opaque Project oil field in Kern County, California. This motion is not seeking approval of that sale.

The Working Interests in the Opaque Project oil field are held by the following persons:

– 42.45% by Pacific Coast Exploration, L.L.C.,
– 27% by Keith Nickell (including Snows Oil Filed Service, Inc. and D.S.R.),

– 11.25% by Opaque Investors I, LLC,
– 10% by Kevin Weddle (including Golden State Natural Gas Systems, Inc.),
– 2.0% by Ken Young/KDY, Inc.,
– 1.5% by Johnny Valensin,
– 5.3% by the bankruptcy estate of Opaque Investors II, L.L.C., and
– 0.5% by the Stuart Smits bankruptcy estate.

In addition to its direct interest in the Working Interests of the Opaque Project oil field, the Stuart Smits bankruptcy estate also owns 35% interest in PCE, 100% membership interest in Opaque Investors II, L.L.C. (subject to its own pending chapter 7 case), 9.33% membership interest in Opaque Investors I, L.L.C., all of Michael Phillips' unspecified interest in PCE, and Michael Phillips' 3.333% interest in Opaque Investors I.

The proposed buyer for the Working Interests of the Opaque Project oil field, GTherm, Inc., has offered to pay $17 million for the Working Interests in their entirety, by making an initial payment of $7 million. The remaining $10 million in payments will be made out of future oil production at a 5% royalty rate.

Under the settlement agreement, assuming a sale of the Working Interests takes place, the initial payment of $7 million from GTherm will be distributed as follows:

(1) PCE will receive $2,521,500, which will be utilized to pay: $1.8 million to Keith Nickell (including Snows Oil Filed Service, Inc. and D.S.R.), $250,000 to Johnny Valensin, $250,000 to Ken Young/KDY, Inc., $75,000 to Dale Hankins, $51,500 to Lester Cufaude, $50,000 to Ben Fitzgerald, $25,000 to Dan Karalash, and $20,000 to Mike Reed.

(2) PCE will receive credit for $450,000 that will be paid directly to the Opaque Investors II, L.L.C., bankruptcy estate. PCE has represented that it owes no further debt.

(3) Keith Nickell (including Snows Oil Filed Service, Inc. and D.S.R.) will receive $1,440,000. In conjunction with this distribution, the parties to the agreement agree not to contest PCE's transfer of 22% of the Working Interests to Mr. Nickell in exchange to his agreement to take a lesser distribution from GTherm's initial payment. Mr. Nickell will be entitled to 27% of the royalty payments, with the first $450,000 being paid at a preference over any royalty payments due to the Stuart Smits estate. Mr. Nickell will release his, Snow's and D.S.R.'s claims against PCE and the bankruptcy estates.

(4) Kevin Weddle (including Golden State Natural Gas Systems, Inc.) will receive $350,000. In conjunction with this distribution, the parties to the agreement agree not to contest PCE's transfer of 10% of the Working Interests to Mr. Weddle in exchange to his agreement to take a lesser distribution from GTherm's initial payment. Mr. Weddle will be entitled to 10% of the royalty payments plus an additional $50,000 that would be due to the Stuart Smits bankruptcy estate, with the first $500,000 being paid at a preference over any royalty payments due to the Stuart Smits estate. Mr. Weddle will release his and Golden State's claims against the estates.

(5) The Stuart Smits estate will receive $800,000.

(6) Opaque Investors I, L.L.C. will receive $787,500 or 11.25% of the $7 million initial payment.

(7) The Opaque Investors II, L.L.C. bankruptcy estate will receive $371,000 representing its 5.3% interest in the Working Interests.

(8) The Opaque Investors II, L.L.C. bankruptcy estate will receive an additional $35,000 representing the 0.5% interest in the Working Interests previously owned by Elias Bardis.

(9) KDY, Inc. will receive $140,000 or 2.0% of the $7 million initial payment.

(10) Johnny Valensin will receive $105,000 or 1.5% of the $7 million initial payment. As Mr. Valensin is not a party to this agreement and there is a pending adversary proceeding against him and the entity he represents, the Smits estate is anticipating entering into a separate settlement agreement with him. That agreement will be the subject of a separate motion.

Under the settlement agreement, assuming a sale of the Working Interests takes place, the $10 million royalty payment from GTherm will be distributed subject to the preferences in favor of Mr. Nickell and Mr. Weddle identified above, as follows:

– 35.5% to the Smits estate and its successors,

– 27% to Mr. Nickell and the entities he represents,
– 11.25% to Opaque Investors, L.L.C.,
– 10% to Mr. Weddle and the entities he represents,
– 7.45% to PCE,
– 5.3% to the Opaque Investors II estate and its successors,
– 2.0% to KDY, Inc., and
– 1.5% to Johnny Valensin.

For further details of the distribution schedule for the royalty payments, interested parties should review the motion papers.

In addition to the foregoing, the agreement provides that:

– Dale Hankins will transfer his 3.333% ownership interest in Opaque Investors I to the Smits estate;

– Mr. Smits will withdraw as member of PCE, while in exchange PCE will transfer to the trustee of his bankruptcy estate 35% of the royalty payments (subject to the foregoing preferences); this will allow PCE to retain 7.45% of the royalty payments with now only two members, Mr. Cufaude and Mr. Hankins;

– PCE will withdraw all of its claims in bankruptcy court except for claims previously asserted on behalf of Mr. Nickell; PCE will be allowed to file amended claims, but the trustees are not waiving any defenses to such claims;

– the bankruptcy trustees will dismiss their claims against Mr. Cufaude and Mr. Hankins in the state court action initiated by Elias Bardis;

– the parties agree that the Sacramento County Superior Court will retain jurisdiction to resolve any disputes pertaining to the interpretation of the agreement.

Creditor Elias Bardis has filed a response, disputing that he actively participated in the negotiations leading to the subject agreement. Mr. Bardis, however, does not oppose approval of the settlement.

On a motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Fed. R. Bankr. P. 9019. Approval of a compromise must be based upon considerations of fairness and equity. In re A & C Properties, 784 F.2d 1377, 1381 (9th Cir. 1986). The court must consider and balance four factors: 1) the probability of success in the litigation; 2) the difficulties, if any, to be encountered in the matter of collection; 3) the complexity of the litigation involved, and the expense, inconvenience, and delay necessarily attending it; and 4) the paramount interest of the creditors with a proper deference to their reasonable views. In re Woodson, 839 F.2d 610, 620 (9th Cir. 1988).

The court concludes that the Woodson factors balance in favor of approving the compromise. The settlement will bring substantial proceeds into the two bankruptcy estates, assuming consummation of the sale ($800,000 from the initial payment and 35.5% of the last $8.385 million in royalty payments to the Smits estate and $856,000 from the initial payment and 5.3% of the royalty payments to the Opaque Investors II estate). The settlement resolves the claims against the estates of the other parties to the agreement. It resolves Mr. Smits' indemnity claims with respect to the Elias Bardis litigation. The Smits trustee is uncertain about the collectibility of any judgment that may be obtained on account of the indemnity claims. The Opaque Investors II estate will receive at least its share of the initial and royalty payments. Given the foregoing, given the comprehensiveness of the settlement, and given the inherent costs, risks, delay and inconvenience of further litigation, the settlement is equitable and fair.

Therefore, the court concludes the settlement to be in the best interests of the creditors and the estate. The court may give weight to the opinions of the trustee, the parties, and their attorneys. In re Blair, 538 F.2d 849, 851 (9th Cir. 1976). Furthermore, the law favors compromise and not litigation for its own sake. Id. Accordingly, the motion will be granted.